WENDOVER and Others *v.* TUCKER.

*Imprisonment for debt is abolished in this state, except in cases of fraud.*

*Under the R. S. 1843, a ca. sa. only issued where it appeared affirmatively by the finding of the Court or jury that the debtor had money or property which he fraudulently concealed or refused to give up.*

*The policy of the law allowing the imprisonment of debtors being, in this state, to prevent fraud, it should receive a strict construction as to the debtor and a liberal one as to the creditor.*

*The R. S. 1843 provide for that rule of construction.*

*There are but two cases, under the R. S. 1843, in which a magistrate can discharge an insolvent: 1. Where a person taken on a ca. sa. is in the hands of the officer making the arrest; 2. Where the person is actually imprisoned in jail on such arrest.*

*After a debtor has given a bond for the prison limits, he is no longer in the hands of the officer, and the latter has no control over him.*

*A discharge by a magistrate of a person who has given bond for the prison limits, is, under the R. S. 1843, unauthorized and void.*

*The actual imprisonment in jail spoken of in the R. S. 1843, means confinement in the jail of the county, properly so called, as distinguished from the " prison limits."*

ERROR to the *Laporte* Circuit Court.

STUART, J.—Debt by *Tucker* against *Wendover* and others on a bond for the prison limits. The declaration alleges the recovery of judgment, the issue of a *capias* on proper affidavit, the arrest of *Wendover*, the giving of the prison bond conditioned in the usual form, and the escape beyond the limits of the county without being duly discharged by law.

The proceeding to obtain the prison bounds was had under chapter 57, R. S. 1843, p. 1019.

The defendants filed five pleas leading to issues of law and fact. Trial and judgment for *Tucker*.

To reverse this judgment the sureties of *Wendover* prosecute the writ of error.

The substance of the defence is embraced in the second plea. That plea assumes that *Wendover* was legally discharged from imprisonment, under chapter 40, R. S. 1843; s. 448, *et infra*. It is further averred, that *Tucker* was present before the magistrate and propounded to *Wend-*

*over* such questions as he thought proper; that the examination was reduced to writing, filed in the clerk's office, and *Wendover* discharged by the justice, &c.; that the property given up by him to the sheriff was sold, and the proceeds applied on the judgment. The first, fourth and fifth pleas were in substance the same; and on demurrer were held insufficient.

The record presents but one question: Does *Wendover* show a sufficient compliance with the statute in procuring his discharge? In other words, was he legally discharged?

The rule of construction applicable to this statute, is first to be settled. As a law in favor of personal liberty, it would seem that it ought to receive a liberal construction. But such is not the rule heretofore adopted by this Court. In giving construction to a similar statute (that of 1838) the Court held the party to considerable strictness. *Webster* v. *Farley*, 6 Blackf. 163.

There are controlling reasons why such strictness should now be observed more rigidly. Imprisonment for debt was then a common mode of procedure to enforce payment. It is now abolished, except in cases of fraud. Gen. Laws 1842, p. 68.—R. S. 1843, p. 752.—R. S. 1852, vol. 1, p. 346; vol. 2, p. 152. Under the statute of 1843, which governs this case, the writ of *ca. sa.* did not issue indiscriminately against every debtor on the return of *nulla bona*, but only against such as were removing or concealing their property. To obtain the writ the execution-plaintiff had to aver these facts, and upon issue being taken thereon, to prove them. R. S. 1843, p. 753. So that, under that statute, the *ca. sa.* never issued only when it appeared affirmatively by the finding of the Court or jury, that the debtor had money or property which he fraudulently concealed or refused to give up. In other words, the debtor must first be convicted of fraud before the *ca. sa.* issues, and then only for the temporary and special purpose of coercing a delivery of the property fraudulently concealed. When he had thus rendered even reluctant homage to honesty, his personal liberty was at once restored.

The policy of the law being to prevent frauds, it should receive a strict construction as to the debtor—liberal as to the creditor. If there could be any doubt, the language of the statute itself seems conclusive as to the rule of construction. It provides that the prisoner who brings himself strictly within the law, may avail himself of its benefits. R. S. 1843, p. 756.

It but remains to inquire whether *Wendover* has brought himself strictly within the law. The objection is, that the act under which he was discharged was not applicable to his case—that the justice of the peace had no authority. The mode of discharge before a magistrate is applicable to only two specified cases. 1. Any person taken on a *ca. sa.*, while in the hands of the officer making the arrest, and, 2. Any person being actually imprisoned in jail on such arrest, may discharge himself, &c.

It is not pretended that *Wendover* comes under the first specification—that he applied for his discharge while in the hands of the officer making the arrest. After the giving of the bond for the limits, the sheriff had no further control over him. Any act of restraint on *Wendover* while on the limits, would have been as much a false imprisonment on the part of the sheriff as though it had been done by any other citizen of *Laporte* county. The moment the bond was given, the authority of the sheriff over him ceased. *Wendover* was free to go where he pleased in the county or out of it—the only consequence of his leaving the county being the forfeiture of his bond. At the time *Wendover* applied to the magistrate to be discharged, he was not in the hands of the officer making the arrest; and, therefore, was not, on that ground, entitled to such discharge.

Has *Wendover* brought himself within the second specification? Was he actually imprisoned in jail on such arrest? With reference to the jailer as to the sheriff, he had a right to go where he pleased. In fact, the jailer was the sheriff. R. S. 1843, p. 1017. In case of his escape from the limits, no liability was thereby devolved on the officer either as jailer or sheriff. Nor

can *Wendover* be said to be imprisoned in the county, for there was no county officer authorized to control his movements. And the statute clearly distinguishes between the jail of the county and the prison limits of the county. *Wendover* was not, therefore, actually imprisoned in the jail of the county within the meaning of the act, and not being so imprisoned, was not entitled to relief in the manner contended for under the second specification. His discharge by the magistrate was, therefore, unauthorized and void.

His remedy, if any, was under the 29th chapter R. S. 1843, which seems to embrace all the cases not provided for in the 40th chapter.

We have been referred with some confidence on the part of the plaintiffs in error, to 9 Met. 303, and 11 *id.* 73. The first, *Jenkins* v. *Newell*, was a decision on the *Massachusetts* statute of 1842, in relation to poor debtors. That act provided that a person arrested for any debt, might give notice to the officer having him in custody, or if he be then bailed out, to the officer who made the arrest, that he was desirous of taking the oath prescribed for poor debtors, &c. The notice was served on the jailer; and it was held that the debtor having given bond for the jail limits, the notice was properly given. The Court reasoned, that though the jailer had no control over him, yet as a surrender, if made by his bail, must be to the jailer, he might still be regarded as constructively in the jailer's custody; and that the notice contemplated by the statute was, therefore, properly served. This case was subsequently reviewed and approved by the same Court in the *Providence Bank* v. *Fullerton*, 11 Met., *supra.*

But these cases simply decide that for the purpose of notice, the debtor on the prison limits may be considered as constructively in the custody of the jailer. They do not apply to the case at bar. The question is not whether *Wendover* was constructively imprisoned, but whether, in the language of the statute, he was " actually imprisoned in the jail." It is too specific to admit of any latitude of construction. The actual imprisonment spoken

of must mean confinement in the jail of the county, pro-
perly so called, as distinguished from the "prison limits."
There is, therefore, no conflict with the *Massachusetts* de-
cisions.   We might safely say that the debtor was con-
structively in the custody of the jailer, for certain pur-
poses necessary to carry out the ends of justice, and yet
consistently adhere to the decision we have indicated.   If
there is any difference in the rules of construction adopt-
ed by the two courts, we adhere to that sanctioned by our
own Court in *Webster* v. *Farley, supra.*

The demurrers to the first, second, fourth and fifth
pleas were properly sustained.

*Per Curiam.*—The judgment is affirmed, with 2 per
cent. damages and costs.

*J. B. Niles,* for the plaintiffs.

*J. L. Jernegan,* for the defendant.